Jack D. Edwards
EDWARDS LAW OFFICE, P.C.
P.O. Box 5345
Etna, WY 83118-5345
307-883-2222 Telephone
307-222-0561 Facsimile

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 SEP 18 PM 4:12

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

LEONEL ALTAMIRANO, individually and §
as next friend of LDA and MJA, minors; §
and REGINA ALTAMIRANO, as next §
friend of JEA, a minor, §
§
§ Civil No. 17CV156-R
Plaintiffs, §
§
vs. §
§
GENERAL MOTORS LLC, §
§
Defendant. § JURY TRIAL REQUESTED

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Come now, Leonel Altamirano; individually and as next friend of LDA and MJA, minors; and Regina Altamirano, as next friend of JEA, a minor, ("Plaintiffs") complaining of General Motors LLC ("Defendant"), and for cause of action would respectfully show the following:

I.
PARTIES

1. Plaintiff Leonel Altamirano is currently a resident of Colorado and was a resident of Wyoming at the time of the occurrence made the basis of this lawsuit.

*Plaintiffs' Original Complaint* Page 1

2. Minor Plaintiffs LDA and MJA are residents of Colorado.

3. Minor Plaintiff JEA is a resident of Colorado.

4. Defendant General Motors LLC is a Delaware limited liability company that has its principal office in Detroit, Michigan. Defendant can be served with process through its registered agent, Corporation Service Company, 1821 Logan Ave., Cheyenne, Wyoming 82001.

## II.
## JURISDICTION AND VENUE

5. Defendant General Motors LLC has its principal place of business in a state other than Wyoming. Jurisdiction, therefore, attaches pursuant to 28 U.S.C. §1332 because there is diversity of parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

6. Venue is proper and maintainable because the occurrence made the basis of this lawsuit occurred in Wyoming.

## III.

## BACKGROUND AND FACTS COMMON TO ALL CAUSES OF ACTION

7. This case involves the rollover protection system (ROPS) of a 2008 GMC Sierra K-1500 pickup bearing VIN 1GTEK13358G132934 ("the Sierra") that rolled over.

8. The ROPS consists of (1) the roof structure; (2) the seat belt restraint; (3) the rollover-activated side curtain air bag; and (4) the vehicle's glazing.

9. The ROPS of the Sierra was designed by General Motors LLC or its predecessors ("GM").

10. The ROPS of the Sierra was manufactured by GM.

11. The ROPS of the Sierra was assembled by GM.

12. The Sierra was marketed by GM.

13. The Sierra was sold by GM.

14. The purpose of performing dynamic rollover testing is to determine if a vehicle's ROPS will maintain survival space and contain the occupant within the vehicle's safety cell.

15. Maintaining survival space helps prevent and/or minimize injuries.

16. GM should have conducted dynamic testing of the Sierra to ensure that the vehicle was safe in rollover crashes even though such testing is not mandated by the Federal Government.

17. The Federal Motor Vehicle Safety Standards ("FMVSS") are regulations written in terms of minimum safety performance requirements for motor vehicles or motor vehicle equipment.

18. Exceeding Federal Standards is desirable when it enhances the safety of motor vehicle occupants.

19. Federal Standards do not require dynamic rollover testing.

20. GM knew that federally mandated testing has a limited relationship to vehicle performance in real world rollovers.

21. In fact, GM conducted dynamic testing on its vehicles many years before the Sierra was designed and built.

22. The Sierra is unreasonably dangerous in rollover crashes, in part, because it does not have a strong roof that can withstand the weight of the vehicle as it rolls.

23. The Sierra is unreasonably dangerous in rollover crashes, in part, because its seat belt restraints do not adequately couple an occupant to his seat as it rolls.

24. During its years of developing, designing, manufacturing, marketing, and selling vehicles, GM knew of the importance of a strong roof structure in its vehicles.

25. GM knew that occupant injury in rollover accidents is highly correlated with survival space reduction.

26. GM knew that roof deformation increases the likelihood of injury.

27. GM knew that injuries in rollovers can be avoided if the roof structure maintains the integrity of the occupant survival space and the seat belt restraints couple occupants to their seats.

28. GM failed to design and manufacture the ROPS of the Sierra so that it would be reasonably safe in a foreseeable rollover crash.

29. GM knew about crashworthiness.

30. Crashworthiness is the science of minimizing the risk of serious injury and fatality in motor vehicle collisions through the use of safety systems.

31. There are five basic crashworthiness principles: (1) maintain occupant survival space, (2) manage the collision energy, (3) restrain the occupant, (4) prevent ejection, (5) prevent fuel-fed fires.

32. Crashworthiness requires that an auto manufacturer design its vehicles in such a way that, when a crash occurs, injuries to the people inside the vehicle are minimized to the extent practical.

33. Because the ROPS of the Sierra included a roof that is weak and dangerous, the ROPS of the Sierra was uncrashworthy.

34. Because the ROPS of the Sierra included seat belt restraints that do not couple occupants to their seats in a rollover, the ROPS of the Sierra was uncrashworthy.

35. When a vehicle's ROPS is not crashworthy, it means that people suffer injuries in a rollover that could have been prevented.

36. Leonel Altamirano was catastrophically injured on October 23, 2015, when he was the right front passenger in the Sierra that rolled over in Albany County, Wyoming.

37. Leonel Altamirano was wearing his seat belt.

38. The rollover crash was of the type that is foreseeable to Defendant GM.

39. During the rollover, the Sierra's roof structure collapsed over Leonel Altamirano while his seat belt restraints failed to couple him to his seat.

40. The injuries sustained by Leonel Altamirano included a spinal cord injury that has rendered him quadriplegic.

## CAUSES OF ACTION

### IV.
### STRICT LIABILITY

Plaintiffs incorporate by this reference each and all of the allegations contained in Paragraphs 1 through 40 of this Complaint as though fully set forth here.

41. The ROPS of the Sierra was designed, manufactured, assembled, marketed, and sold by Defendant GM.

42. The Sierra's rollover occupant protection system was unreasonably dangerous in

design and manufacture, and such defects were the producing cause of Plaintiff Leonel Altamirano's injuries and the resulting damages to Plaintiffs.

43. There were safer alternative designs that would have prevented these defects and inadequacies and that would have either prevented or significantly reduced the risk of injury without substantially impairing the utility of the Sierra's ROPS.

44. Furthermore, the safer alternative designs were economically and technologically feasible at the time the ROPS of the Sierra left the control of Defendant GM by the application of existing or reasonably achievable scientific knowledge.

45. Defendant GM, therefore, is strictly liable to Plaintiffs under applicable products liability law without regard to or proof of negligence. Plaintiffs therefore bring this action under §402(A) and §402(B) of the RESTATEMENT OF TORTS, SECOND, although Plaintiffs would also show that the defective rollover protection system of the Sierra was negligently designed, manufactured, assembled, marketed, and sold in a defective condition and that such negligence proximately caused Plaintiffs' injuries and damages.

46. The ROPS of the Sierra is defective in that the vehicle was improperly and inadequately tested by Defendant GM.

47. The ROPS of the Sierra is defective in that the vehicle's roof structure was weak and did not maintain its integrity and preserve occupant survival space in the event of a rollover crash.

48. The ROPS of the Sierra is defective in that the seat belt restraints it included failed to couple occupants to their seats, thereby providing appropriate occupant restraint and

protection in the event of a rollover crash.

49. The unreasonably dangerous nature of the defects in the ROPS of the Sierra as outlined above creates a high probability that when the Sierra is involved in rollover crashes, severe and permanent personal injuries will result.

50. Defendant GM knew of this probability prior to production and marketing of the vehicle and nevertheless sold the vehicle with the defective ROPS which caused the injuries and damages to Plaintiffs.

51. The defective ROPS of the Sierra was a proximate and producing cause of injuries and damages to Plaintiffs as more specifically described herein.

V.
NEGLIGENCE

Plaintiffs incorporate by this reference each and all of the allegations contained in Paragraphs 1 through 51 of this Complaint as though fully set forth here.

52. The injuries and damages suffered by Plaintiffs were proximately caused by the negligence of Defendant GM in designing, manufacturing, assembling, testing, and selling a vehicle with an ROPS that does not provide adequate rollover occupant protection.

53. Defendant GM was negligent in designing the ROPS of the Sierra with inadequate roof strength.

54. Defendant GM was negligent in designing the ROPS of the Sierra with seat belt restraints that do not couple occupants to their seats in foreseeable rollover crashes.

55. Defendant GM was negligent in selling the ROPS of the Sierra with defects, and without proper warnings.

56.     Defendant GM was negligent in choosing to design the ROPS of the Sierra without a sufficiently strong roof even though it was aware of vehicle designs and testing which revealed the clear benefits of roofs with sufficient strength to prevent compromise of the "survival space" or "safety cage" around an occupant.

57.     Defendant GM was negligent in failing to adopt state-of-the-art technology to provide occupants and consumers with proper protection.

58.     Defendant GM was negligent in choosing to disregard and ignore its obligation to hold the safety of the public paramount.

59.     Defendant GM was negligent in choosing to disregard and ignore generally accepted principles of hazard control ("design, guard and warn").

60.     A manufacturer has a duty to warn users about the potential for harm arising out of the use of its product, and GM was negligent in failing to warn about the inherent dangers in the ROPS of the Sierra.

61.     Because of Defendant GM's negligence, consumers were denied important and material information that should have been fully disclosed.

62.     The negligence of Defendant GM was a proximate cause of the injuries and damages complained of herein.

## VI.
## BREACH OF WARRANTY

Plaintiffs incorporate by reference each and all of the allegations contained in Paragraphs 1 through 62 of this Original Complaint as though fully set forth here.

63.     Plaintiffs further allege that the ROPS of the Sierra was expressly and impliedly

warranted by GM to be safe for the use for which it was purchased. In particular, GM expressly and impliedly warranted that the ROPS of the Sierra was crashworthy and would protect occupants of the Sierra from injury, or at least not contribute to the injuries suffered, in the event of a foreseeable crash.

64. The ROPS of the Sierra was neither safe nor fit for the purpose for which it was purchased, nor was it of merchantable quality. As a result, the express and implied warranties mentioned above were breached.

65. As a direct and proximate result of the breach of warranties, the ROPS of the Sierra roof structure crushed and the seat belt restraints failed to couple Leonel Altamirano to his seat, and such failures caused injury and damages to Plaintiffs.

## VII.
## DAMAGES

Plaintiffs incorporate by this reference each and all of the allegations contained in Paragraphs 1 through 65 of this Complaint as though fully set forth here.

66. As a result of the actions and conduct of Defendant GM set forth above, Plaintiff Leonel Altamirano was catastrophically injured in the rollover of the Sierra.

67. Because of the nature and severity of the injuries sustained, Plaintiff Leonel Altamirano has suffered physical pain and mental anguish and, in reasonable probability, will continue to suffer physical pain and mental anguish in the future, both of which were proximately caused by Defendant GM's defective product and wrongful and negligent conduct.

68. Plaintiff Leonel Altamirano has suffered and will continue to suffer disfigurement, disability and loss of enjoyment of life, all of which were proximately caused by proximately

caused by Defendant GM's defective product and wrongful and negligent conduct.

69. Because of the nature and severity of the injuries sustained, Plaintiff Leonel Altamirano has been forced to incur, and will incur in the future, medical expenses and costs, all of which were proximately caused by Defendant GM's defective product and wrongful and negligent conduct.

70. The medical expenses and costs for necessary medical treatment and services Plaintiff Leonel Altamirano has received in the past and those for treatment and services that will in reasonable probability be necessary in the future have been and will be reasonable and were made necessary by the occurrence in question.

71. As a result of his injuries, Plaintiff Leonel Altamirano has also sustained a loss of income and earning capacity, past and future, as proximately caused by Defendant GM's defective product and wrongful and negligent conduct.

72. Because of the severity of the injuries sustained by their father, Leonel Altamirano, who is now quadriplegic, Minor Plaintiffs have suffered a loss of parental consortium and all factors considered therein by law as a result of those injuries as proximately caused by Defendant GM, and have personally suffered a loss of the services that would have been performed by Leonel Altamirano, for which they seek and are entitled to recover compensation.

## VIII.
## JURY DEMAND

73. Plaintiffs respectfully request a jury trial.

## IX.

PRAYER

WHEREFORE, Plaintiffs pray that Defendant General Motors LLC be cited to appear and answer herein, and that upon final trial, Plaintiffs recover actual and compensatory damages as specified above, including medical expenses (past and future), an award for pain and suffering (past and future), an award for loss of enjoyment of life (past and future), an award for disfigurement and disability (past and future), an award for lost income and earning capacity (past and future), an award for loss of parental consortium, an award for such additional costs and damages as permitted by Wyoming law and are deemed just and equitable, and for such other and further relief, both general and special, legal and equitable, to which they may be justly entitled.

DATED this 14 day of September 2017.

JACK D. EDWARDS       WSB No. 6-3877
EDWARDS LAW OFFICE, P.C.
P.O. Box 5345
Etna, WY 83118-5345
Telephone:    307-883-2222
Facsimile:    307-222-0561
Email:        jedwards@silverstar.com

and

ROBERT E. AMMONS
(*pro hac vice* application to be submitted)
THE AMMONS LAW FIRM, L.L.P.
3700 Montrose Boulevard
Houston, Texas   77006
Telephone:    713-523-1606
Facsimile:    713-523-4159

|  |  |
|---|---|
| Email: | rob@ammonslaw.com |
| Email: | joy@ammonslaw.com |

ATTORNEYS FOR PLAINTIFFS